

FILED
SEP - 4 2007
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON THE WEBSITE
NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re:

DENNIS J. JACOPETTI,

Debtor.

Case No. 06-23654-D-7

VAN DE POL ENTERPRISES, INC.,

Plaintiff,

v.

DENNIS J. JACOPETTI,

Defendant.

Adv. Pro. No. 06-2392-D

Docket Control No. PA-2

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

**MEMORANDUM DECISION**

On July 13, 2007, Dennis J. Jacopetti ("Defendant") filed a Motion to Dismiss First and Second Causes of Action of Complaint to Determine Dischargeability of Debt, bearing Docket Control No. PA-2 (the "Motion"). For the reasons set forth below, the court will deny the Motion.



## I. INTRODUCTION

The Defendant seeks to dismiss the first and second causes of action of the complaint in this adversary proceeding on the ground that the debt allegedly due by the Defendant to Van De Pol Enterprises, Inc. ("Plaintiff") was extinguished by operation of law when the Defendant received a bankruptcy discharge in this case in 1994.[1] The complaint contains only two causes of action, so the granting of the Motion would result in dismissal of this adversary proceeding.

The Defendant commenced this bankruptcy case on November 23, 1993, by the filing of a petition for relief under chapter 13 of the Bankruptcy Code. In 1994, the case was converted to a chapter 7 case on the Defendant's application. The Defendant received a bankruptcy discharge on June 3, 1994, and the case was closed on December 16, 1994.

The case was reopened in 2006 on the motion of the Plaintiff, who claimed to be an unsecured creditor of the Defendant. On November 30, 2006, the Plaintiff filed the complaint commencing this adversary proceeding. According to the Plaintiff, at the time the Defendant commenced this case as a chapter 13 case, in 1993, he deliberately omitted the Plaintiff and several other unsecured creditors from his schedules, in an attempt to bring himself within the then unsecured debt limit of $100,000 for chapter 13 eligibility. The Plaintiff contends that this conduct amounted to a false oath, and that if the Plaintiff

---

1. The case at that time was assigned Case No. 93-94830. The case was closed in 1994, and reopened in 2006, at which time it was transferred to the Sacramento Division of this court, and was assigned its current case number, No. 06-23654.

had received notice of the bankruptcy, it would have filed a successful objection to the discharge. Thus, the Plaintiff asserts that the Defendant is judicially estopped from asserting the discharge as a defense, and that application of the discharge to its claim would amount to a denial of due process.

On December 13, 2006, the Defendant filed an answer to the complaint and asserted certain affirmative defenses, including that the complaint fails to state a cause of action upon which relief can be granted and that any obligation the Defendant may have owed to the Plaintiff was extinguished by the Defendant's bankruptcy discharge.

On July 13, 2007, the Defendant filed the Motion, together with a memorandum of points and authorities and a number of exhibits. On August 1, 2007, the Plaintiff filed opposition to the Motion, and on August 8, 2007, the Defendant filed a memorandum of points and authorities in reply. On August 15, 2007, the Motion came before the court for hearing, counsel appeared and presented oral argument, and the matter was submitted.

## II. CONTENTIONS OF THE PARTIES

The Defendant seeks an order dismissing the Complaint under Fed. R. Civ. P. 12(b)(6), incorporated in this proceeding by Fed. R. Bankr. P. 7012(b), for failure to state a claim upon which relief can be granted.

The Defendant's argument centers on the undisputed fact that his chapter 7 case was at all times a "no-asset case;" that is, that the notice by which creditors were advised of the case also advised them not to file a proof of claim unless they later

received a notice to do so, that the chapter 7 trustee filed a no-asset report after the conclusion of the meeting of creditors, and the case was thereafter closed as a no-asset case, without creditors ever being advised to file proofs of claim. It is also undisputed that the debt allegedly owed to the Plaintiff was a pre-petition debt. Thus, the argument goes, the debt was discharged by operation of law when the Defendant received his bankruptcy discharge on June 3, 1994. The Defendant cites Beezley v. California Land Title Co., 994 F.2d 1433 (9th Cir. 1993).

The Defendant also relies on Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola), 328 B.R. 158 (9th Cir. BAP 2005), in which the Bankruptcy Appellate Panel held that "the bankruptcy discharge cannot be circumvented on equitable grounds" (328 B.R. at 160), and thus, that the Plaintiff's judicial estoppel theory must fail.

The Plaintiff responds that Beezley and Gurrola are inapposite, and relies instead on Ford v. Ford (In re Ford), 159 B.R. 590 (Bankr. D.Or. 1993), in which the court held that a debt otherwise covered by a discharge would be excepted from discharge if the debtor obtained it by violating the creditor's right to procedural due process.

The Defendant, in turn, replies that Ford is inapposite, and that the facts of this case bring it within the holding of White v. Nielsen (In re Nielsen), 383 F.3d 922 (9th Cir. 2004), with the result that the discharge applies to the Plaintiff's claim.

/ / /

/ / /

III. ANALYSIS

This court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). The Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

A. Standards for Dismissal under Rule 12(b)(6)

The United States Supreme Court has recently adopted a "plausibility" standard for assessing Rule 12(b)(6) motions, analyzing the complaint before it in terms of whether it contained enough factual allegations, taken as true, to plausibly suggest that the plaintiff was entitled to relief. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929, 945 (2007). "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.

The Court did not disturb its earlier pronouncement in Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683 (1974), that on a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." 416 U.S. at 236. Thus, "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" Bell Atl. Corp., 127 S. Ct. at 1965, quoting and characterizing Scheuer v. Rhodes, 416 U.S. at 236.

B. Effect of Defendant's Discharge on Plaintiff's Debt

The Defendant begins his analysis with In re Beezley,

/ / /

/ / /

/ / /

supra,[2] for the proposition that, because his case was a no-asset case, and because the Plaintiff's debt does not fall within the terms of 11 U.S.C. § 523(a)(2), (4), or (6), the discharge per force applies to the Plaintiff's debt. The court concludes, instead, that this case turns on the requirement for procedural due process, and for this reason, the Defendant's reliance on Beezley is misplaced. Beezley deals only with application of the discharge to an unlisted debt in situations where due process is not at issue.

In Beezley, the Ninth Circuit Court of Appeals held that in a no-asset chapter 7 case, a debt of a type covered by 11 U.S.C. § 523(a)(3)(A) is discharged, even though the creditor was omitted from the schedules and did not receive notice of the bankruptcy filing, and thus, that reopening of the case to schedule the creditor would serve no purpose. 994 F.2d at 1434.

The Plaintiff distinguishes Beezley, arguing that here, the Defendant omitted the Plaintiff and other creditors from his schedules in a bad faith attempt to bring himself within the chapter 13 debt limits, and in doing so, in bad faith deprived the Plaintiff of his right to object to the Defendant's discharge. The court agrees that Beezley does not govern the outcome of this case.

Instead, the court concludes that this case fits squarely within the holding of the Ford decision. Although the conduct of the debtor in Ford was arguably more egregious than that of the

---

2. The Defendant also discusses at length In re Mendiola, 99 B.R. 864 (Bankr. N.D. Ill. 1989), which is to the same effect as Beezley.

Defendant in the present case, if this court finds in further proceedings that the Defendant's conduct was sufficiently egregious to have warranted a denial of his discharge, the Ford holding will be on all fours.

In Ford, the court first rejected the creditor's argument that the debt was nondischargeable as an omitted debt under 11 U.S.C. § 523(a)(3)(A). The court rightly observed that because the case was a no-asset case, under Beezley, the debt did not fall within the § 523(a)(3)(A) exception (159 B.R. at 591-92), and further, that "[t]here is no other statutory basis under § 523 for excepting the debt from the discharge of § 727, . . . ." Id. at 592. The same conclusions apply in this case.

However, the court in Ford went on to conclude that application of the discharge to the debt in that case would violate the procedural due process rights of the creditor.

> The due process infirmity in the instant case is that the plaintiff had no notice that her debt was subject to discharge in bankruptcy, and therefore had no opportunity to challenge that discharge. [Citation.] Had the plaintiff received such timely notice, I am convinced that she would have succeeded in preventing the discharge of her debt or, if the discharge had already been entered, obtaining revocation of the discharge.
>
> The plaintiff's right to protect her debt from discharge was valuable. The debtor made no attempt to give plaintiff notice of the bankruptcy, and effectively prevented the plaintiff from coming into court to protect her rights. Declaring plaintiff's debt discharged under such circumstances violates the procedural due process guaranteed by the Fifth Amendment of the United States Constitution, which requires notice and an opportunity to be heard. [Citation.]

159 B.R. at 594.

/ / /

Similarly, in the present case, if the court finds that if the Plaintiff had been given timely notice of the bankruptcy filing, it would have been successful in objecting to the Defendant's discharge, the court must conclude that application of the discharge to the Plaintiff's debt would amount to a denial of the Plaintiff's right to due process.

The Defendant argues that the Plaintiff's theory in this case is identical to the one rejected in the Nielsen case. The court in Nielsen followed the Beezley decision, and held that because the case before it was a no-asset case, § 523(a)(3)(A) did not protect the creditor's claim from the discharge. 383 F.3d at 927. The court also held that because the creditor could not establish that the discharge was obtained through fraud, she was not entitled to revoke it. "For Ms. White to prove that the Nielsens' discharge was 'obtained through' the fraud, she must at least show that, but for the fraud, the discharge would not have been granted. That she cannot do." 383 F.3d at 925 (emphasis added). Finally, the court rejected the creditor's due process argument for similar reasons. "Ms. White's due process claim fails because nothing was taken from her. If she has a dischargeable debt, its discharge was not brought about by the lack of notice. If she had a non-dischargeable debt, she still has it. The lack of notice had no effect on her." 383 F.3d at 927.

The difference here is that the Defendant is alleged to have deliberately omitted several creditors, including the Plaintiff, in order to orchestrate his financial situation to fit within the chapter 13 debt limits. The court is not prepared to conclude

that this conduct could not possibly have prevented the Debtor's discharge. On the contrary, if the Defendant is found to have deliberately made a false oath that was material, and if such conduct rises to a level sufficient to warrant denial of the discharge, then the court must also conclude that the Plaintiff was denied his due process right to challenge the discharge. Nielsen itself suggests this conclusion.

> Had [the creditor], in her proceeding to revoke the discharge, shown that, in truth, there were assets, or that there was some reason that the Nielsens should not have been discharged, this would be quite a different case.

In re Nielsen, 383 F.3d at 926 (emphasis added).

To dismiss the action on the present motion might well mean rewarding a debtor for manipulating the information on his schedules in an attempt to keep the most boisterous creditor from participating in the case until it was too late to deny or revoke the discharge. This result would be contrary to every principle of fairness, and certainly, contrary to the requirement of due process.

This decision should not be construed as holding that the Defendant's discharge may be revoked. The bar date for a complaint to revoke the discharge passed long ago (11 U.S.C. § 727(e)), and it applies regardless of whether the discharge was procured through fraud. In re Ford, supra, 159 B.R. at 593. Nor should this decision be interpreted to mean that if a debtor manipulates his schedules so as to keep a particular creditor from participating in the case, that alone will be grounds for excepting that creditor's debt from the discharge. Nielsen holds to the contrary.

Rather, the court's holding here is that if the Plaintiff can prove that the Defendant's discharge would have been denied or revoked if the Plaintiff had had notice in time to object, then it will have succeeded where the creditor in Nielsen failed--it will have succeeded in demonstrating that the Defendant's failure to schedule it changed the outcome of the case. In that circumstance, the Plaintiff will have succeeded in showing that it was deprived of a valuable right--the right to protect its claim from discharge, and the requirement for due process will mandate that the discharge be determined not to apply to that claim.

Similar considerations apply in the court's analysis of the Plaintiff's claim of judicial estoppel. The court recognizes the holding of the Gurrola case, that estoppel theories may not be used to circumvent the discharge. However, the decision itself contains limiting language. "The gravamen of our analysis is that § 524(a) eliminates the revival of the discharged debt as a remedy for post-petition misconduct." Ibid. (emphasis added). The decision did not address the issue presented in this case; namely, whether the Defendant's pre-petition conduct can form the basis for a successful judicial estoppel argument. The same judge who authored the Gurrola decision had earlier suggested in dicta, in a case involving the effect of a discharge on an omitted creditor, "the possibility of imposing judicial estoppel against a party who plays 'fast and loose' with the court." See Paine v. Griffin (In re Paine), 283 B.R. 33, 40 (9th Cir. BAP 2002).

/ / /

In Gurrola, the debtor fairly obtained his discharge. In the instant case, it is asserted that the Defendant procured his discharge through fraud. The fraud was not discovered within a year of entry of the discharge, and thus, the discharge was and is insulated from being revoked. The court is not prepared to expand the Gurrola holding to these facts. When a discharge is fraudulently procured, it does not receive the protection afforded by Gurrola, and consideration of equitable estoppel principles is not precluded.

In short, the court is not prepared to hold that, under the facts of this case, judicial estoppel cannot possibly apply to prevent the application of the Defendant's discharge to the Plaintiff's debt.

## IV. CONCLUSION

In any event, however, the court concludes that, regardless of the applicability of judicial estoppel, if the court is persuaded in further proceedings that the discharge would have been denied had the Plaintiff had timely notice, it will also conclude that application of the discharge to the Plaintiff's debt would offend the requirement of procedural due process.

For the reasons set forth above, the court will issue an order denying the Motion.

Dated: September 4, 2007

Robert Bardwil
ROBERT S. BARDWIL
United States Bankruptcy Judge

**CERTIFICATE OF MAILING**

I, Andrea Lovgren, in the performance of my duties as assistant to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document to each of the parties listed below:

Attorney for Plaintiff

Donald Stevenson
311 E Main St., #302
Stockton, CA 95202-2904

Attorney for Defendant

Estela Pino
4600 Northgate Blvd., #215
Sacramento, CA 95834

DATE: SEP - 4 2007

Andrea Lovgren